**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KAINIER DELGADO-BARDAJI,    )  NO. EDCV 26-1909 FMO (AS)
                        )
          Petitioner,    )
                        )
        v.            )  **ORDER GRANTING PETITION AND**
                        )
KRISTI NOEM, et al.,     )  **REQUIRING PETITIONER'S IMMEDIATE**
                        )
         Respondents.   )  **RELEASE FROM CUSTODY**
                        )

**I.**

**INTRODUCTION**

On April 7, 2026, Kainier Delgado-Bardaji ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: Kristi Noem, former Secretary of the United States Department of Homeland Security ("DHS"); Pam Bondi, former United States Attorney General; United States Immigration and Customs Enforcement ("ICE"); Acting ICE Director Todd Lyons; Ernesto Santacruz, Director of the Los Angeles ICE Field Office; Sirce Owen, Acting Director of the Executive Office for Immigration Review; the Adelanto Immigration Court; and

Fereti Semaia, Warden of the Adelanto ICE Processing Center (collectively "Respondents"). (Docket ("Dkt.") No. 1). The Petition raises seven grounds for federal habeas relief: (1) Petitioner was arrested without reasonable suspicion in violation of the Fourth Amendment; (2) Petitioner's warrantless arrest violated 8 U.S.C. § 1357(a)(2); (3) Petitioner's warrantless arrest violated 8 C.F.R. § 287.8(c)(2)(ii); (4) Petitioner has been denied an adequate process to challenge his unlawful detention in violation of due process of law; (5) Petitioner is eligible for a bond hearing under Section 1226(a) and its implementing regulations; (6) Petitioner's detention without a bond hearing violates the Administrative Procedures Act; and (7) the district court has the inherent authority to release Petitioner on bond. (Petition, ¶¶ 22-44).[1]

On April 23, 2026, Respondents filed a Response to the Petition ("Response"), which asserted that "Petitioner appears to be a member of the Bond Eligible Class certified in" Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. 2025), amended and superseded on reconsideration, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), and also "acknowledge[d] that Petitioner's claim in this action appears subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it." (Dkt. No. 11). Petitioner did not file a Reply.

On May 29, 2026, the Court requested the parties file supplemental briefs. (Dkt. No. 12). On June 4, 2026, Petitioner filed a

---

[1] The Court cites the paragraphs as numbered in the Petition, which begins with paragraph 7. (See Petition, ¶¶ 7-44).

Supplemental Brief with the Declaration of Grace White ("White Decl.") and exhibits, and Respondents filed a Supplemental Response with exhibits ("Supp. Res.") with exhibits.  (Dkt. Nos. 13-14).

For the reasons discussed below, the Petition is GRANTED and Petitioner is ordered immediately released from custody subject to the conditions, if any, of his most recent order of supervision.

## II.

### BACKGROUND

On April 29, 2022, Petitioner, who is a Cuban national, was paroled into the United States through the Cuban Humanitarian Parole program.[2] (Petition, ¶¶ 18, 20; Supp. Res., Exh. C; White Decl., ¶ 4, Exh. 2). After one year, he filed an application under the Cuban Adjustment Act.[3] (Petition, ¶ 20; White Decl., ¶ 5).

Petitioner has resided in Jacksonville, Florida since entering the United States.  (White Decl., ¶¶ 5, 8).  Petitioner had a work permit and was working while living in the United States.  (White Decl., ¶ 8).

---

[2]  Petitioner states he was paroled into the United States with a Form I-220A.  (Petition, ¶ 20).  Form I-220A is an "Order of Release on Recognizance," which is given to noncitizens "who have been placed in removal proceedings and then released on their own recognizance." (See https://www.uscis.gov/save/current-user-agencies/commonly-used-immigration-documents (last visited June 12, 2026)).

[3]  The Cuban Adjustment Act "has long permitted Cuban nationals who were admitted or paroled into the United States to become lawful permanent residents after being here for more than a year." Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 56 (D. D.C. 2025).

ICE detained Petitioner on December 15, 2025. (Petition, ¶ 19; White Decl, ¶ 3). On December 18, 2025, DHS served Petitioner with a Notice to Appear charging him with removability under Immigration and Naturalization Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled, and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who is not in possession of a valid unexpired visa and passport, or other required entry or travel documentation, at the time of application for admission, and placed Petitioner in removal proceedings. (White Decl., ¶ 6, Exh. A). Petitioner is currently detained at the Adelanto ICE Processing Center.[4] (Petition, ¶ 17).

On February 25, 2026, an Immigration Judge ("IJ") found Petitioner inadmissible to the United States under INA § 212(a)(6-7), 8 U.S.C. § 1182(a)(6-7), denied Petitioner voluntary departure and ordered Petitioner removed to Cuba. (Supp. Res., Exh. A). On March 20, 2026, Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), where it remains pending before the BIA. (Supp. Res., Exh. B; White Decl., ¶ 1, Exh. 1A).

\\

\\

---

[4] The Petition asserts that venue is proper in the Southern District of California since, among other things, "the Petitioner is detained in [that] District[.]" (Petition, ¶ 8). But this is incorrect. Petitioner is detained in Adelanto, California, which is in San Bernardino County in this district. 28 U.S.C. § 84(c). Accordingly, venue is proper in this Court. See, e.g., Bermudez v. Semaia, 2026 WL 1196233, *2 (C.D. Cal. 2026) ("Venue is proper in this district because Bermudez is held in detention at the Adelanto ICE processing center located within the Central District of California.").

## III.

## DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))).  "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990.  "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner contends he has been denied due process of law because he was arrested without a warrant or probable cause and has been unlawfully detained without being provided "an adequate and meaningful" – or indeed any – process to challenge his unlawful detention.[5] (Petition, ¶¶ 27, 29, 31-34).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was

_____

[5] In his Supplemental Brief, Petitioner also challenges the IJ's removal decision. (See, e.g., Dkt. No. 13 at 2 ("It is argued that [the IJ] should not have ordered [Petitioner's] removal from the United States. . . .")). But the Court lacks jurisdiction to consider such arguments. See, e.g., 8 U.S.C. § 1252(a)(5) (A "petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal. . . ."); Nasrallah v. Barr, 590 U.S. 573, 580 (2020) ("The REAL ID Act clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals"). Therefore, the Court limits its discussion to Petitioner's due process challenge to his arrest and detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]"); Esquivel Pacheco v. LaRose, 818 F. Supp. 3d 1168, 1175 (S.D. Cal. 2026) ("Because Petitioner's unlawful detention claims fall outside § 1252's jurisdictional bars, the Court finds that it has jurisdiction to review Petitioner's habeas petition.").

accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody.  As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026). Moreover, it is undisputed that Petitioner was paroled into the United States in 2022, and remained free for over three years before ICE arrested him.  (Petition, ¶¶ 19-20; White Decl., ¶ 4).  "Petitioner's release . . . gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'"  Martinez, 821 F. Supp. 3d at 1190 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, __ F. Supp. 3d __, 2026 WL 218808, *4 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Rojas v. Albarran, __ F. Supp. 3d __, 2025 WL 4693108, *4 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from

custody she has a protected liberty interest in remaining out of custody.").

Petitioner's release into the United States also created "an implicit promise" liberty would be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Rojas, __ F. Supp. 3d at __, 2025 WL 4693108 at *4. Thus, "Petitioner establishes a significant liberty interest in remaining out of immigration custody." Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he has spent out of custody. Morrissey, 408 U.S. at 482; Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'  That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . .  The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing.[6]  (Petition, ¶¶ 27, 29, 31-34).  Under these circumstances, there is a high risk of erroneous deprivation of liberty.  See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention

---

[6]  Indeed, in their Supplemental Response, Respondents acknowledge that Petitioner has not had a detention hearing since being detained on December 15, 2025.  (Supp. Response at 2).

hearing."); <u>Meneses</u>, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); <u>Duong v. Kaiser</u>, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); <u>Pinchi</u>, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing.  Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); <u>Torres Ferrera v. Scott</u>, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied.  Put differently, no process can never equal due process.  The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); <u>G.S. v. Hermosillo</u>, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation").  Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  <u>Zadvydas</u>, 533 U.S. at 690; <u>Martinez</u>, 821 F. Supp. 3d at 1191.  Yet, Petitioner's initial release from ICE custody "reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he]

no longer meets those criteria." Pinchi, 792 F. Supp. 3d at 1034; see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to the community."). Accordingly, the second Mathews factor favors Petitioner.

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). "However, the key government interest at stake here 'is not the continued detention of Petitioner, but the government's ability to detain him without [notice and a pre-detention] hearing[,]'"[7] Singh v. Semaia, 2026 WL 1611896, *5 (C.D. Cal. 2026) (quoting Zagal-Alcaraz v. ICE Field Office, 2020 WL 1862254, *7 (D. Or.), report and recommendation adopted by, 2020 WL 1855189 (D. Or. 2020)); see also Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("[T]he Court notes that the governmental issue at stake in

---

[7] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." (italics omitted)), appeal dismissed by, 2019 WL 4855033 (9th Cir. 2019), and as many courts have recognized, "there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens like [P]etitioner without a pre-detention hearing." Meneses, 811 F. Supp. 3d at 1164; Martinez, 821 F. Supp. 3d at 1192; see also Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing.  See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'  We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Torres Ferrera, 2026 WL 776145 at *5 ("Because Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution.  Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States.").  And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required."[8] Torres Ferrera, 2026 WL 776145 at *6; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained"); Movsesyan v. Bondi, 2026 WL 712824, *2-5 (C.D. Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner

_____

[8] Having so concluded, the Court need not address the other claims Petitioner raises.

13

without notice and an opportunity to be heard" when Petitioner had "shown that his re-detention without any notice or an opportunity to be heard violates procedural due process"); Ovikian v. Noem, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . . The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]." (italics in original)); Juan v. Noem, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate remedy for the violation of Petitioner's constitutional rights is release.").

## IV.

## ORDER

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED**. Respondents **shall immediately release Petitioner (A240811955)** from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

14

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on June 18, 2026, confirming Petitioner has been released from custody.  IT IS SO ORDERED.

Dated this 12th day June, 2026.

                                          /s/
                               FERNANDO M. OLGUIN
                               UNITED STATES DISTRICT JUDGE